**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

State of Minnesota, by its Attorney General Mike Hatch,

Plaintiff,

v.

Fleet Mortgage Corp., a South Carolina corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-48 ADM/AJB

---

Prentiss Cox, Esq., Assistant Minnesota Attorney General, appeared for and on behalf of the Plaintiff.

Gary DiBianco, Esq., Benjamin Klubes, Esq., and Andrew Sandler, Esq., Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., and Alan Maclin, Esq., Briggs & Morgan, St. Paul, MN, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 24, 2001, pursuant to Defendants' Rule 12(b) Motion to Dismiss [Doc. No. 19]. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

The State of Minnesota ("State") alleges Defendant Fleet Mortgage ("Fleet Mortgage") provided other companies with information about its customers and participated in a related telemarketing scheme in violation of various state and federal consumer fraud statutes.[1] On a

[1] At the hearing, Fleet Mortgage's counsel represented that Fleet Mortgage no longer engages in the alleged illegal conduct.

FILED JUN 19 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

motion to dismiss, a complaint's factual allegations must be accepted as true. *Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir. 1999). Accordingly, the following facts are as stated in the State's Complaint.

Fleet Mortgage is a South Carolina corporation that is a subsidiary of Fleet National Bank ("FNB"). Fleet Mortgage provides, buys, and services home mortgages to customers around the United States and in Minnesota. Compl. ¶¶ 3, 6. For the last three years, Fleet Mortgage has entered into business relationships with various telemarketing companies ("Companies") to facilitate through telemarketing the sale of certain "membership programs" to Fleet Mortgage customers ("Customers"). *Id.* ¶¶ 7, 9. The membership programs provide discounts on certain services, such as health care, home shopping, and car repair. *Id.* ¶ 8. Fleet Mortgage participated in deciding which membership programs to offer, as well as content, details, and price to its Customers. *Id.* ¶ 12. It also reviewed and approved the telemarketing scripts. *Id.* ¶ 13.

Fleet Mortgage provided the Companies with the names, phone numbers and addresses of Customers. *Id.* ¶ 10. In order to tailor the sale of the membership programs, Fleet Mortgage also disclosed information specific to Customers' mortgages: the account number, current balance, original loan amount and the monthly payment. *Id.* Prior to May 1999, Fleet did not disclose to its customers that it was relaying this information to the other Companies. *Id.* ¶ 18. In May 1999, FNB, Fleet Mortgage's parent company, announced a data privacy policy, declaring that while it may share information with unaffiliated companies to offer products or services, it provides "the minimum amount of information necessary for that company to offer its product or service." *Id.* ¶ 19.

During the sales calls, the telemarketers stated that they were calling at Fleet Mortgage's

request or on its behalf. *Id.* ¶ 14. Typically, the telemarketer would first tell the Customer that he had a "free trial offer" for the Customer's consideration. *Id.* ¶ 26. After explaining the membership programs, the telemarketer offered the Customer a free month membership. *Id.* ¶ 32. Near the end of the call, the Customer was told that if she decided to continue with the plan after 30 days, a monthly fee would be automatically charged to her account. *Id.* ¶ 37. If the customer did not cancel within the requisite time period, Fleet Mortgage added the monthly fee directly onto the Customer's mortgage. *Id.* ¶ 32. The charge was placed without the customer making another affirmative action. This scheme is known as "pre-acquired account telemarketing." *Id.* ¶ 7. Fleet Mortgage retained a percentage of the fee and paid the balance to the Companies. *Id.* ¶ 16.

## III. DISCUSSION

The State argues that Fleet Mortgage's information sharing practices and membership program telemarketing scheme violates both federal and state law. The State's Complaint alleges five counts of violations of the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69, subd. 1 (Count I & Count III), the Uniform Deceptive Trade Practices Act ("UDTPA"), Minn. Stat. § 325D.44, subd. 1 (Count I & Count III), the Minnesota False Statement in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67 (Count II & Count III), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108 (Count IV & Count V). Fleet Mortgage's Motion to Dismiss seeks dismissal of all causes of action on several different grounds.

### A. Motion to Dismiss Standard

On a motion to dismiss under rule 12(b)(6), the court must construe the complaint's

allegations in a light most favorable to the plaintiff. *Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir. 1999). All factual allegations must be accepted as true. *Id.* Only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief" should a complaint be dismissed. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998).

**B. OCC's Exclusive Authority/Primary Jurisdiction**

Fleet Mortgage avers that it is a branch of a national bank, and that federal law gives the Office of the Comptroller of the Currency ("OCC") exclusive authority to bring all state and federal claims against national banks and their branches. The OCC regulates federally chartered national banks and can issue "cease and desist" orders against any insured bank that violates a "law". 12 U.S.C. § 1818(b)(1); *see Nat'l St. Bank, Elizabeth, N.J. v. Long*, 630 F.2d 981, 987 (3d Cir. 1980). Federal banking law also states that "[t]he provisions of any State law to which a branch of a national bank is subject. . . shall be enforced, with respect to such branch, by the Comptroller of the Currency." 12 U.S.C. § 36(f).

The fraud and deceptive trade practice laws at issue do not directly concern a banking practice and the alleged illegal actions are not banking industry specific. Federal law does not require that the OCC have exclusive enforcement over such actions. *See Long*, 630 F.3d at 988. The OCC has no direct responsibility for enforcing non-banking state laws such as the MCFA, UDTPA, and MFSAA.

Fleet Mortgage also avers that the instant claims should be dismissed as barred by the "primary jurisdiction" doctrine. Primary jurisdiction is a common law doctrine that "allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first

instance, even when the matter is initially cognizable by the district court." *Access Telecomm. v. SW Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998). Because the OCC does not have expertise regarding these non-banking claims, the doctrine is not to be applied in this situation. *See id.*

**C. Count I - MCFA**

Count I of the Complaint alleges that Fleet Mortgage violated the MCFA/UDTPA by failing to adequately disclose to customers that it: (1) was sharing financial and personal data with other companies ("Data Sharing"); and (2) charged Customers' mortgage accounts without written or other traditional forms of consent ("Pre-acquired Account Telemarketing"). Compl. ¶ 54. Fleet Mortgage argues that these practices are not on the UDTPA's list of "deceptive practices" in Minnesota Statutes section 325D.44. Although Data Sharing and Pre-acquired Account Telemarketing are not specifically listed, section 325D.44 contains a "catch-all" provision stating that a deceptive practice occurs where a person "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Fleet Mortgage asserts that because its practices are not similar to the deceptive practices enumerated in section 325D.44, the practice is not actionable under the UDTPA. However, the catch-all does not require that the conduct itself be similar to the actions listed, just that the result to the consumer is similar in creating confusion or misunderstanding. *See* Minn. Stat. § 325D.44. Accordingly, Fleet Mortgage's argument fails.

Fleet Mortgage next asserts that the Data Sharing component of Count I should be dismissed because it merely alleges an omission. Fleet Mortgage avers that an "omission can only give rise to a claim of misrepresentation where there is a duty to disclose the allegedly omitted information." Def.'s Mem. Supp. at 13. The cases relied upon for this proposition

concern common law fraud and not state consumer protection statutes. *Id.* The MCFA and UDTPA are broader than common law fraud and support omissions as violations. *See In Re Prof'l Fin. Mgmt., Ltd.*, 703 F.Supp. 1388, 1397 (D. Minn. 1989). While there is no Minnesota case authority directly on point, other courts hold that while a duty to disclose may be required by common law fraud/misrepresentation, it is not required for liability under more broadly drafted consumer protection statutes. *See V.H.S. Realty v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir. 1985); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996). In such situations, the omission must be material, *see* 757 F.2d at 417; 675 N.E.2d at 595, meaning it must naturally affect the person's decision or conduct, *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn. Ct. App. 1985). At this early stage of the litigation, the Complaint survives on the issue of whether the failure to disclose the Data Sharing with customers is a material omission. Dismissal of Count I is denied.

**D. Count II - MFSAA**

Count II premises a violation of the MFSAA, Minn. Stat. § 325F.67, on allegations that Fleet Mortgage engaged in Data Sharing while representing on a FNB website that it shared only "the minimum amount of information necessary" for other companies to provide products and services to Customers. Fleet Mortgage asks for dismissal of Count II on two grounds, that the website is not an advertisement, and the website statement is ambiguous and not demonstrably false.

First, as a result of section 325F.67's expansively broad definition of advertisement, "book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter or. . . an advertisement of any sort", a fact issue is presented and is not resolvable on a motion to

dismiss. Second, while it is true that the MFSAA and UDTPA requires that the statement be provably false, *see McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 854-55 (8th Cir. 2000), a statement that "[w]e share the minimum amount of information necessary for that company to offer its product or service" is sufficiently subject to proof to survive a motion to dismiss. *See generally* Ivan L. Preston, *Puffery and Other "Loophole" Claims: How the Law's "Don't Ask, Don't Tell" Policy Condones Fraudulent Falsity in Advertising*, 18 J.L. & Com. 49 (1998). The Motion to Dismiss Count II is denied.

**E. Count III - MCFA/UDTPA/MFSAA**

Count III of the Complaint alleges that Fleet Mortgage's participation in the telemarketing and sale of the membership programs violates the MCFA, the UDTPA and the MFSAA. Fleet Mortgage asks for dismissal on two grounds: (1) non-liability for the conduct of the Companies; and (2) the State failed to plead any misleading practice.

A defendant that "uses" or "employs" a deceptive practice to sell a product may be liable under the UDTPA. Minn. Stat. § 325F.69, subd. 1. Likewise, under the MCFA, a defendant that "engages" in the misleading conduct may be liable. *Id.* § 325D.44, subd. 1. Fleet Mortgage's first argument fails because the State has averred that Fleet Mortgage itself engaged in the telemarketing by approving scripts and allowing the Companies to use Fleet's name during the call. Compl. ¶¶ 13-14. Furthermore, it employed the scheme for financial benefit. Compl. ¶ 16. Dismissal on this ground is improper.

On the second issue, the Complaint's deceptive practice allegations pass Rule 12(b) muster. For example, the State asserts that promoting the trial program as "free" obscures the fact that accepting the free trial means that inaction will cause automatic monthly charges for the

membership program to the Customer's mortgage account without the need for the customer's signature. Compl. ¶¶ 26-28. These allegations are not non-deceptive as a matter of law. Fleet Mortgage's Motion to Dismiss Count III is denied.

**F. Count IV & V - Telemarketing Act**

Counts IV & V of the Complaint aver violations of the Telemarketing Act. Count IV alleges that Fleet Mortgage violated the Telemarketing Act by misrepresenting (1) the nature of the call and (2) how the Customer will be charged for the membership programs. The State avers that this conduct violates the Telemarketing Act provision that makes it illegal to misrepresent, "directly or by implication. . . [a]ny material restriction, limitation, or condition to purchase, receive or use goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a). Count V alleges that Fleet Mortgage violated the Telemarketing Act by failing to promptly disclose in the calls that the purpose of the call was to sell goods or services. *Id.* § 310.4(d).

Fleet Mortgage argues that it is not regulated by the Telemarketing Act because it does not meet the act's definition of "telemarketer", nor does it "provide substantial assistance or support to any seller or telemarketer with knowledge of a violation." Considering the State's allegations that Fleet Mortgage provided Customers' phone numbers and personal information specifically to sell membership programs, Compl.¶¶ 10-11, allowed the Companies to use Fleet Mortgage's name in the solicitation, *id.* ¶¶ 13-14, and that Fleet Mortgage approved scripts, *id.*, the Complaint sufficiently alleges as a matter of law that Fleet Mortgage provided substantial assistance to the Companies with knowledge of the alleged conduct.

Finally, Fleet Mortgage asks for dismissal of Count V based on the fact that the telemarketing scripts comply with the Telemarketing Act's disclosure requirements. The

Telemarketing Act requires that a telemarketer disclose "promptly and in a clear and conspicuous manner" to the receiver that the "purpose of the call is to sell goods or services." 16 C.F.R. § 310.4(d). The State alleges conduct in the Complaint that could, if proven, arguably violate this provision. *See e.g.* Compl. ¶ 31. Fleet Mortgage's Motion to Dismiss is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 19] is **DENIED**.

2. On June 18, 2001, Fleet Mortgage filed a Motion for Leave to Submit Supplemental Authorities in Support of the Motion to Dismiss [Doc. No. 34]. The Motion to Submit Supplemental Authorities is **DENIED** as untimely. Because the issue of whether the Telemarketing Act applies to Fleet Mortgage as a subsidiary of a national bank is not discussed or considered in the Order, the denial of the Motion to Supplement Authorities is without prejudice to bringing a Motion to Dismiss on this ground.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 19, 2001