**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

State of Minnesota, by its
Attorney General, Mike Hatch,

Plaintiff,

v.

Fleet Mortgage Corporation,
a South Carolina corporation,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-48 ADM/AJB

---

Prentiss Cox, Esq., Assistant Attorney General, St. Paul, MN, appeared for and on behalf of Plaintiff.

Andrew L. Sandler, Esq., Gary DiBianco, Esq., Skadden Arps, Slate, Meagher & Flom, Washington, DC, Alan H. Maclin, Esq., Briggs and Morgan, St. Paul, MN, and Matthew D. Forsgren, Esq., Briggs and Morgan, Minneapolis, MN, appeared for and on behalf of Defendant.

John F. Daly, Esq., Federal Trade Commission, Washington, DC, appeared as Amicus Curiae on behalf of Plaintiff.

Frederick G. Petrick, Jr., Esq., Office of the Comptroller of the Currency, Washington, DC, Amicus Curiae on behalf of Defendant.

---

## I. INTRODUCTION

On October 2, 2001, the Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 42] of Defendant Fleet Mortgage Corporation ("FMC") was argued before the undersigned United States District Judge. For the reasons set forth below, the Motion to Dismiss is denied.

## II. BACKGROUND

The State of Minnesota (the "State") brings suit against FMC under the Telemarketing Sales Rule, 16 C.F.R. §§ 310.1-310.7 ("TSR"). State attorneys general may enforce the TSR pursuant to

FILED DEC 2 1 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

15 U.S.C. § 6103(a) against entities regulated by the Federal Trade Commission ("FTC"). For the Court to have subject matter jurisdiction, the FTC must have authority over FMC under § 133 of the Gramm-Leach-Bliley Act ("GLBA").

Both parties agree that the FTC has jurisdiction over non-banks, but no authority to enforce the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41 *et seq.*, against banks as a result of the bank exclusion language of 15 U.S.C. § 45(a)(2).[1] Thus, under 15 U.S.C. § 6105(a), the TSR does not apply to regulate the activities of entities such as banks which are beyond the jurisdiction of the FTC Act. Fleet National Bank is a federally-chartered national bank, and FMC is a subsidiary of Fleet National Bank.[2] DiBianco Decl., Exs. 1-4. The function of FMC is to "engage solely in mortgage loan servicing." Id., Ex. 2.

At issue is the bank/non-bank status of FMC. The State claims FMC is a non-bank, and seeks to assert FTC authority over FMC as non-bank subsidiary of a national bank. It argues that under § 133 of the GLBA, the TSR applies to FMC because FMC is "not itself a bank." The GLBA explains the dichotomy as follows:

> Section 133. CLARIFICATION OF STATUS OF SUBSIDIARIES AND AFFILIATES
>
> (a) Clarification of Federal Trade Commission Jurisdiction. — Any person that . . .

---

[1] The FTC is the federal agency with principal responsibility for the protection of consumers from unfair and deceptive trade practices, and it is broadly empowered to prevent such practices in or affecting commerce, by "persons, partnerships, or corporations," except for certain expressly excluded entities such as "banks." 15 U.S.C. § 45(a)(2). The FTC Act defines "banks" to include national banks, but does not include affiliates or subsidiaries of banks in its definition.

[2] Prior to October, 2000, FMC was a subsidiary of Fleet Mortgage Group, Inc., which was in turn a subsidiary of Fleet National Bank. DiBianco Decl., Ex. 2. This made FMC a "second tier" subsidiary of Fleet National Bank. Id., Ex. 3. In October, 2000, FMC merged with Fleet Mortgage Group, Inc., becoming a direct subsidiary of Fleet National Bank. Id., Exs. 2-3.

> is controlled directly or indirectly by . . . any bank . . . ([as] defined in section 3 of the Federal Deposit Insurance Act) and is not itself a bank . . . shall not be deemed to be a bank . . . for purposes of any provisions applied by the Federal Trade Commission under the Federal Trade Commission Act.

GLBA, Pub. L. No. 106-102, 1113 Stat. 1383, Title I, § 133(a) (1999). The Federal Deposit Insurance Act defines a "bank" as "any national bank, State bank, District Bank, and any Federal branch and insured branch." 12 U.S.C. § 1813(a)(1)(A). This definition does not include national bank operating subsidiaries, and thus the State asserts that FMC is not itself a bank.[3]

FMC argues that as a national bank operating subsidiary, it does not qualify as a "non-bank." As such, FMC claims it is a bank, by virtue of being "effectively an incorporated department" of a bank. Def. Mem. in Supp. at 4. FMC suggests this status establishes that it is not, and never was, a FTC regulated entity. The argument is that banks and their operating subsidiaries are expressly excluded from coverage under the TSR, because the FTC Act prohibits FTC jurisdiction over "national banks" subject to the jurisdiction of the Office of the Comptroller of the Currency (the "OCC").[4] FMC insists that the OCC regulatory scheme makes no distinction between operating

---

[3] Other sections of the GLBA specifically refer to subsidiaries, such as the privacy provision at § 505 which was written to apply to "national banks . . . and any subsidiary of such entities . . . ." 15 U.S.C. § 6805(a)(1)(A). Section 133(a) includes no such reference to subsidiaries. Likewise, in the privacy provisions of the GBLA, Congress expressly provided that the FTC does not have authority to promulgate or enforce rules governing entities subject to regulation by a federal banking agency, 15 U.S.C. § 6805(a), and specifically stated that the regulations therein were to be enforced against national banks by the Office of the Comptroller of the Currency, 15 U.S.C. § 6805(a)(1)(A), thereby eliminating the possibility of concurrent jurisdiction between the Office of the Comptroller of the Currency and FTC under that section. No such reservation of authority was included in § 133.

[4] The OCC is a bureau of the Treasury Department that functions as the primary supervisor for all national banks, as well as all federal branches and agencies of foreign banks in the United States. See 12 U.S.C. §§ 21 *et seq.* The OCC administers statutory provisions governing virtually every aspect of the national banking system, including the authority to charter new national banks. See 12 U.S.C. §§ 21.

subsidiaries and their parent national banks, causing them to fall effectively within the definition of a "bank." Def. Mem. in Supp. at 4, 7; Def. Resp. to FTC Mem. at 5. FMC urges the Court to defer to the OCC to determine the proper definition of "bank," rather than relying on the definition referenced in the text of § 133.

FMC also asserts that allowing the TSR to apply to FMC would expand FTC jurisdiction contrary to the intent of Congress.[5] FMC avers that the FTC is barred from enforcing the TSR against entities previously under the jurisdiction of the OCC, and suggests that such OCC jurisdiction over bank operating subsidiaries has been, and must continue to be, exclusive. Def. Mem. in Supp. at 11. FMC suggests that the purpose of § 133 was merely to preserve the pre-existing jurisdiction of the FTC.[6] FMC argues that the limited purpose of § 133 is to allow the FTC to retain jurisdiction over "non-bank businesses" that previously could not have been owned by banks, and that it was not intended to expand FTC authority to operating subsidiaries engaging in banking activities.

The State contends that the language of § 133 creates an understandable and easily-administered bright-line rule setting forth which entities the FTC has authority over, viz., any entity "not itself a bank." It reasons that to otherwise read into § 133 a distinction between "traditional" subsidiaries and newly delineated subsidiaries not engaging in banking activities would confuse the

---

[5] FMC asserts that the Telemarketing and Consumer Fraud and Abuse Prevention Act, authorizing the FTC to promulgate the TSR, states that "[n]o activity which is outside the jurisdiction of [the FTC Act] shall be affected by this chapter." 15 U.S.C. § 6105(a).

[6] FMC gleans this from the following commentary: "[Section 133(a)] simply makes it clear that [other businesses such as securities firms that are acquired by banks] do not fall within the bank or savings association exemption because they are owned by such an entity." H.R. Conf. Rep. No. 106-434, at 162 (1999). All parties agree the FTC can still enforce the Act against these businesses even after acquisition by a bank, just as it could before they were acquired by a bank.

issue and subvert the intended goal of Congress in choosing the language it did. The Court agrees.

## III. DISCUSSION

In interpreting the GLBA, the Court is guided by the principle that "[i]f the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary." United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (quoting United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997), cert. denied, 523 U.S. 1011 (1998)) (internal citations omitted). Thus, if the intent of Congress can be discerned from the language of the statute, "the judicial inquiry must end." Id. Upon a finding that the statutory terms are unambiguous, further judicial inquiry is only called for in rare and exceptional circumstances where the application of the statute as written will produce a result demonstrably at odds with the intent of Congress. See Demarest v. Manspeaker, 498 U.S. 184, 190 (1991).

The language used in § 133 is not ambiguous. On a careful reading of the language, a clear meaning is attributable to the words used. Section 133 specifies that any entity controlled by a bank that is not itself a bank "shall not be deemed to be a bank." GLBA, § 133(a). FMC's argument hinges on a judicial interpretation that an operating subsidiary that is not itself a bank is "indistinguishable" from its parent bank as an "incorporated department." Def. Mem. in Supp. at 4. This is precisely what the plain language of § 133 dictates must not be done for purposes of provisions applied by the FTC under the FTC Act.

FMC's argument why it should be so deemed rests on the notion that operating subsidiaries somehow fall within the definition of a "bank." In support of FMC's argument, the OCC, as *amicus*, also argues that the properly understood definition of a "bank" should be the one created by the Federal Reserve 15 years ago. OCC Mem. at 7. The OCC argues that the Federal Reserve defined

a "bank" to include, *inter alia*, "operating subsidiaries that are functionally equivalent to a department or division of the bank itself." Id.[7] FMC agrees, stating that, as the primary supervisor for all national banks, the OCC treats operating subsidiaries the same as banks, subjecting them to all the banking law restrictions applicable to the parent banks.[8] Def. Mem. in Supp. at 4. FMC also argues that deference should be accorded to the definition of the OCC regarding whether an operating subsidiary should be considered a part of the bank, and thus "itself a bank" by extension, because the OCC determines what activities are "banking activities" in order to regulate permissible acts of operating subsidiaries. Id. at 14. Under this scheme, FMC argues that the TSR does not apply to banks under the banking exclusion from FTC jurisdiction, and thus, since operating subsidiaries are "effectively" defined as banks, and therefore indistinguishable, the TSR does not apply to them either. Def. Resp. to FTC Mem. at 5.

---

[7] The OCC points out that under section 8 of the Federal Deposit Insurance Corporation Act, 12 U.S.C. § 1818, Federal banking regulators had exclusive enforcement authority to take action against "banks" under the FTC Act and implementing regulations of the Federal Reserve, and that the Federal Reserve defined "bank" to include subsidiaries. OCC Mem. at 4.

[8] The State points out that under the regulations in effect at the time the GLBA was passed, the OCC's "Operating Subsidiary Rule" actually treated subsidiaries as distinct from parent banks by allowing the subsidiaries to engage in activities "different from that permissible for the parent national bank . . . ." 12 C.F.R. § 5.34(f) (1997) (as adopted in 61 Fed. Reg. 60376 (November 27, 1996)). The State further argues that even if the OCC now treats subsidiaries the same as banks, under § 5.34 as amended in 2000, that fact still does not make the operating subsidiary "itself a bank," noting that operating subsidiaries hold a separate incorporated status from their parent banks, and subsidiaries are not chartered as federal banks. Pl. Mem. at 8-9, 12. "Except in unusual circumstances, courts will not disregard the separate identities of a parent and its subsidiary, even a wholly-owned subsidiary. Securities Industry Ass'n. v. Fed. Home Loan Bank Brd., 588 F.Supp. 749 (D.D.C. 1984) (citing Labadie Coal Co. v. Black, 672 F.2d 92, 96 (D.C. Cir 1982) ("the greatest judicial deference normally is accorded to the separate corporate entity")); see also Board of Governors of Federal Reserve System v. Investment Co. Institute, 450 U.S. 46 (1981) (holding that a bank and its holding company should not be treated as a single entity for purposes of the Glass-Steagall Act).

These arguments are unavailing, however, because § 133 specifically identifies Congress' intended source for determining the proper definition of a "bank" for purposes of applying the section. The language of § 133 clearly and unambiguously applies to any bank or savings association "as such terms are defined in section 3 of the Federal Deposit Insurance Act." GLBA, § 133(a). Thus, the only relevant definition of "bank" is the one specified in § 133. The Federal Deposit Insurance Act defines a "bank" as "any national bank, State bank, District Bank, and any Federal branch and insured branch." 12 U.S.C. § 1813(a)(1)(A). There is no ambiguity present in this definition. The definition of "bank" identified by Congress simply does not include subsidiaries of banks. Therefore, FMC fits precisely into the category of entities described by the language of § 133 as an entity controlled by a bank that is not itself a bank according to the prescribed definition. This ordinary meaning of the words is presumed to express congressional purpose. United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999), cert. denied, 528 U.S. 859 (1999).

Because the plain language of § 133 has an unambiguous meaning on its face, only a "clearly expressed legislative intention to the contrary" can override that meaning. Id. The arguments of FMC do not rise to the level of identifying a clearly expressed legislative intent.

The thrust of FMC's next contention is that because OCC jurisdiction over operating subsidiaries was exclusive prior to the GLBA,[9] § 133 cannot be interpreted to allow FTC jurisdiction

---

[9] Despite FMC's argument, the OCC has acknowledged concurrent jurisdiction with other government agencies over non-bank operating subsidiaries in its rule comments on OCC investigatory powers. While "each operating subsidiary is subject to examination and supervision by the OCC[,] . . . [t]his does not mean . . . that the OCC's jurisdiction necessarily is exclusive over a given subsidiary, and many subsidiaries have 'functional' regulators, such as NASD Regulation, Inc., the Securities and Exchange Commission, or a state insurance department." 64 Fed. Reg. 60095 (November 4, 1999).

over subsidiaries subsequently. It reasons that the GLBA was intended solely to preserve pre-existing FTC jurisdiction over non-bank businesses and not to grant any new jurisdiction to the FTC over entities previously controlled by the OCC (such as FMC). FMC asserts that the function of the GLBA was to permit banks to own new types of subsidiaries formerly not permitted, for example, "non-bank businesses" like securities firms, and that these newly permitted operating subsidiaries are the only focus of the language in § 133. Therefore, FMC argues, the jurisdiction of the FTC under § 133 is limited to retaining jurisdiction over this sub-class of subsidiaries. Under FMC's interpretation, the reference in § 133 to "any" entity owned by a bank that is not itself a bank should be understood as referring only to the "non-bank business" subsidiaries that the GLBA now permitted banks to own. All other "traditional" operating subsidiaries, FMC argues, or any subsidiary previously permitted for bank ownership (and thereby already subject to OCC jurisdiction) prior to the GLBA, were intended to be excluded from the language of § 133.

Again, FMC's arguments are insufficient to demonstrate a clearly expressed legislative intent. There is no indication in the language of § 133, nor in the legislative history of the GLBA, that Congress intended to create a distinction between different classifications of operating subsidiaries by the use of the language "any [entity] . . . controlled . . . [by a] bank [that] . . . is not itself a bank." GLBA, § 133.

FMC next argues that the determinative issue is whether or not operating subsidiaries have always been subject to OCC regulation (which all parties concede). Def. Reply Mem. at 2, Pl. Mem. at 2. This is determinative, FMC asserts, because the savings provision in § 133(b) prohibits any jurisdictional encroachment on OCC authority as a result of the GLBA. The savings provision states that "[n]o provision of this section shall be construed as restricting the authority of any Federal

banking agency . . . ." GLBA, § 133(b). FMC argues that OCC authority will be restricted if the FTC is able to assert jurisdiction over operating subsidiaries under § 133(a) concurrently with the OCC's authority to regulate subsidiaries as a part of its power to supervise the national banking industry.

A Court interpreting two such sections "should, of course, read the two sections as consistent rather than conflicting, if that be possible." Helvering v. Credit Alliance Corp., 316 U.S. 107 (1942). Section 133(b) can readily be understood as consistent with § 133(a). Allowing the State to enforce the TSR against FMC through the jurisdiction of the FTC will in no way "restrict" the authority of the OCC to regulate national bank operating subsidiaries just as it has always done in the past. The OCC's insistence that it must have exclusive jurisdiction over subsidiaries in order to avoid having its authority "restricted" is not persuasive.

Finally, FMC reasons that since its authority to enforce regulatory statutes against national banks is exclusive pursuant to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691c, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1607, it must also be exclusive regarding national bank operating subsidiaries under the GLBA. Significantly, however, both the ECOA and TILA have specific enforcement provisions stating that the restrictions therein are to be enforced against "national banks" by the OCC, and that the FTC is only to enforce the requirements imposed "[except to the extent that enforcement . . . is specifically committed to some other Government agency . . . ." ECOA, § 1691c(a) & (c); TILA, § 1607(a) & (c). No such specific provisions are articulated in the GLBA, therefore the analogy is inapposite and irrelevant to the interpretation of the plain meaning of § 133. FMC argues that Congress was aware of the OCC's exclusive authority to regulate under the ECOA and TILA, and since a new or revised statute is "presumed to be harmonious with existing

law," Congress must have intended the same exclusivity under the GLBA. Def. Reply Mem. at 15; Estate of Wood v. Commissioner of Internal Revenue, 909 F.2d 1155, 1160 (8th Cir. 1990). However, Congress simply chose not to provide exclusivity to the OCC in the GLBA. There is no direct authority establishing exclusive jurisdiction over national bank operating subsidiaries,[10] and nothing akin to the explicit statements of exclusivity found in the ECOA and TILA appears in the relevant sections of the GLBA. The evidence that Congress intended to express the limitations suggested by FMC by using the clear and unambiguous language of § 133 is insufficient to constitute the clearly expressed legislative intent necessary to override the presumption that the ordinary meaning of the words expresses congressional purpose. Thus, there is no compelling reason to believe that allowing concurrent jurisdiction[11] would "produce a result demonstrably at odds with the intentions of [Congress]" in promulgating § 133 with the language it chose. Demarest, 498 U.S. at 190.

There is a general acknowledgment that this area of law is unsettled. While engaged in the mind-numbing process of statutory interpretation, it is important to bear in mind that:

> The "plain purpose" of legislation . . . is determined in the first instance with reference to the plain language of the statute itself. Application of "broad purposes" of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.

---

[10] It is not convincing that the FTC Act of 1914 excluded national banks from FTC jurisdiction, because that broad "bank exclusion" operates with respect to "banks," not "subsidiaries of banks." Additionally, in the context of the Securities and Exchange Act of 1934, which also includes a bank exclusion, the SEC and OCC have agreed that "subsidiaries and affiliates [of banks] are not covered by the bank exclusion." SEC No-Action Letter, 1993 WL 199082, at *6 (May 6, 1993); FTC Mem. at 9.

[11] Banking agencies such as the OCC have enforcement authority as to unfair and deceptive practices by bank affiliates. FTC Mem. at 13.

> Congress may be unanimous in its intent to stamp out some vague social or economic evil; however, because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.

Board of Governors of Federal Reserve System v. Dimension Financial Corp., 474 U.S. 361, 373-374 (1986) (internal citation omitted).

Therefore, pursuant to the unambiguous plain language of § 133(a) of the GLBA, the FTC has jurisdiction over FMC, and the State has the authority to enforce the TSR against FMC. Subject matter jurisdiction has been properly established.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that FMC's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 42] is **DENIED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: December 21, 2001